UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD L. PORTER,<br><br>        Plaintiff<br><br>        v.<br><br>RAY MABUS, Secretary, Department of the Navy,<br><br>        Defendant | CASE NO. 1:07-CV-0825 AWI SMS<br><br>ORDER RE: PLAINTIFF'S MOTIONS FOR RECONSIDERATION<br><br>(DOCS. 175 AND 186) |

**I. History**

For over twenty years, Roland Porter ("Plaintiff"), a former Navy employee has litigated various discrimination claims against the Navy and the Defendant, Ray Mabus ("Defendant"). Defendant initially employed Plaintiff as a police officer in the Safety and Security Department of the China Lake Naval Air Warfare Center beginning in 1974. See Porter v. Winter, EEOC Doc. 0120051744, 2006 WL 3697987 (EEOC December 4, 2006). On March 31, 1988, when Plaintiff sought to return to work after medical leave, Defendant ordered a fitness-for-duty examination and determined that Plaintiff could no longer perform his prior position as a result of a psychological disability. Accordingly, in 1989, Plaintiff was reassigned to a position in the Information Management Department as a computer assistant; however he experienced difficulties with his supervisor in that position.

After leaving his second job in the Information Management Department as the result of a reduction in force ("RIF") at China Lake, Plaintiff held a position in the Weapons Software Branch. Plaintiff remained in the Weapons Software Branch until a second RIF removed Plaintiff from Navy employment on November 19, 1999. Responding to the second RIF, Plaintiff filed two

complaints with the U.S. Equal Employment Opportunity Commission Office of Federal Operations which alleged age discrimination and retaliation. The administrative proceedings resulted in a finding of no discrimination. See <u>Porter v. Winter</u>, EEOC Doc. 0120051744. This case arises out of that specific administrative proceeding. Plaintiff filed suit on June 7, 2007. The operative complaint is the First Amended Complaint. Doc. 95. In that pleading. Plaintiff alleges age discrimination and reprisal against Defendant. Defendant responded to Plaintiff's first amended complaint with seven affirmative defenses including failure to state a claim on which relief can be granted, the claim is barred by the statute of limitations, Plaintiff did not pursue all of the administrative remedies, all claims not set forth in Plaintiff's original claim are time barred, Plaintiff's claims are barred by the doctrine of laches, Plaintiff's claim duplicates claims asserted in other cases now or previously pending before the court, and Plaintiff failed to mitigate damages. A persistent concern in this case has been overlap with other cases Plaintiff filed against Defendant.

The present motions for reconsideration deal with two orders issued by Magistrate Judge Sandra Snyder that resolved a large number of discovery disputes that spanned from 2008 through 2012. In relevant part, on October 5, 2010, Plaintiff renoticed earlier filed discovery motions. Doc. 119, referencing Docs. 33, 44, 51, and 61. Defendant then filed a motion for summary judgment. Doc. 122. Judge Snyder held a number of telephonic conferences and it was resolved that Defendant would withdraw the summary judgment motion, discovery would continue, and Defendant was granted an additional hour to depose Plaintiff. Docs. 124, 125, 127, and 128. To help clarify the outstanding discovery issues, the parties filed a joint statement of discovery disputes. Doc. 129. Judge Snyder held an in-chambers conference on June 16, 2011 to address the discovery disputes; the parties were directed to meet to discuss language that was mutually agreeable for inclusion in a proposed order. Doc. 138. On July 10, 2011, Plaintiff filed a proposed order that did not include any input from Defendant. Doc. 139. Plaintiff filed a declaration setting out the many failed attempts made to contact Defendant. Doc. 140. Plaintiff then made motions for sanctions against Defendant for, among other objections, failure to comply with the requirements set out at the June 16, 2011 meeting. Docs. 150 and 153. On January 30, 2012,

Plaintiff made a new motion for discovery, seeking to depose six individuals. Doc. 156.

On March 16, 2012, Judge Snyder issued a written order ("First Order") disposing of all outstanding discovery and sanctions requests; to effectuate the ruling, Judge Snyder reopened limited discovery until July 31, 2012. Doc. 175. In relevant part, Section III.B directed Plaintiff to submit to an additional deposition; Section III.E directed Defendant to review and supplement responses to interrogatories and permitted Plaintiff to depose the respondents if the responses are incomplete or unresponsive; and Section III.H denied Plaintiff's request for additional production of documents and directed Defendant to provide declarations affirming that all relevant sources of electronic documents were properly searched. Plaintiff filed a motion for reconsideration of the First Order, seeking review of Sections III.B and III.H. Doc. 176.

After the issuance of the First Order, Plaintiff sought to depose twelve individuals: Ngoc Nguyen, Crystal Garman, Gregory Morrow, Arlene Black, Ronald Smiley, Robert Page, Christopher Perkins, Thomas Purcell, Jean Johanboeke, Joaquin Revier, Donald Summer, and Stephen Wooley (collectively the "Twelve Deponents"). Defendant objected, arguing that deposing the Twelve Deponents went beyond the scope of the First Order. Judge Snyder asked the parties to provide informal briefs that would not be filed in the docket. See Doc. 182, Part 1. Plaintiff set out the information sought of each of the Twelve Deponents. Doc. 186, Part 6. Defendant set out objections. Doc. 186, Part 2. On May 15, 2012, Judge Snyder issued another order ("Second Order") that disallowed these depositions. Doc. 183. Plaintiff filed a motion for reconsideration of the Second Order. Doc. 186.

Both reconsideration motions were opposed. Docs. 179 and 191. The motions were taken under submission without oral argument.

## II. Legal Standard

Federal Rules of Civil Procedure 72(a) gives Magistrate Judges the authority to hear and decide nondispositive pre-trial matters. Fed. R. Civ. Proc. 72(a). Title 28 U.S.C. §636(b)(1)(A) states "A judge of the court may reconsider any pretrial matter under this subparagraph(A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." The

court must give deference to a nondispositive order entered by a magistrate judge unless the order is "clearly erroneous or contrary to law." <u>Grimes v. City and County of San Francisco</u>, 951 F. 2d 236, 241 (9th Cir. 1991). Additionally, the reviewing court may not substitute its judgment for that of the deciding court. <u>U.S. v. BNS, Inc.</u>, 858 F. 2d 456, 464 (9th Cir. 1988).

An order is "clearly erroneous" if, after consideration of all of the evidence, the district court is left with the "definite and firm conviction that a mistake has been committed." <u>Burdick v. Commissioner</u>, 979 F. 2d 1369, 1370 (9th Cir. 1992). An order is "contrary to law" if it fails to apply or misapplies the existing law including case law, statues, or rules of procedure. <u>Yen v. Baca</u>, 2002 WL 32810316 at *2 (C.D. Cal. 2002).

## III. Discussion

**A. Reconsideration of the First Order**

Plaintiff's first motion for reconsideration challenges Judge Snyder's discovery order of March 15, 2012 (Doc. 175). Specifically, Plaintiff objects to Sections III.B and III.H of the analysis.

**1. Section III.B**

The First Order permitted an additional deposition of Plaintiff to examine damages: "Although Plaintiff has agreed only to a one-hour deposition, the Court orders that this deposition may continue as long as may be necessary to fully address Plaintiff's claimed damages." Doc. 175, 7:15-17. Plaintiffs object to the unlimited duration of the deposition. Doc. 176, 9:16-10:2. In a joint discovery plan filed after the June 11, 2011 meeting, the Navy offered to limit its deposition of Plaintiff to one hour. Doc. 144, 6:20.

"Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours. The court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." Fed. R. Civ. Proc. 30(d)(1). Courts have the ability to authorize depositions of unlimited duration when necessary. See <u>Stonebreaker v. Guardian Life Ins. Co. of</u>

4

Am., 2012 U.S. Dist. LEXIS 13307*4-6 (S.D. Cal. Feb. 3, 2012). Judge Snyder's order falls under the "unless otherwise stipulated or ordered by the court" language of Rule 30. The First Order noted that additional information could come to light concerning specific job openings Plaintiff will argue he should have been placed in: "following production of the additional information that Plaintiff seeks in discovery, Plaintiff will be prepared to testify with specificity to the jobs into which Defendant should have placed him." Doc. 175, 7:8-10. Judge Snyder's order is not clearly erroneous or contrary to law.

**2. Section III.H**

The First Order denied Plaintiff's request for additional production of documents and directed Defendant to provide declarations affirming that all relevant sources of electronic documents were properly searched. Plaintiff objects that this section (1) does not address his request for non-electronic documents and (2) fails to address Defendant's objections to Plaintiff's requests. Plaintiff states "The Discovery Order fails to address the issue that plaintiff's motion(s) to compel production of documents included production of hard/paper copies of documents and is clearly erroneous in asserting that plaintiff was only seeking electronic documents." Doc. 176, 3:13-16. Additionally, Plaintiff points out that Defendant has objected to Plaintiff's request and that the order does not directly "rule on the validity of defendant's objections." Doc. 176, 7:16-17. Section III.H is entitled "Plaintiff's Requests for Production of Electronic Documents." Doc. 175, 12:7. However, the First Order does not exist in a vacuum. As the history of the case shows, Judge Snyder and the parties had been dealing with these specific discovery disputes for well over a year before she issued her opinion. In particular, the Plaintiff's requests for production were discussed during the conference on June 16, 2011:

> counsel for the parties met with Judge Snyder on June 16, 2011, in chambers, for several hours, and a number of agreements were reached. One of those agreements was that Defendant would produce written declarations from Navy personnel, signed under penalty of perjury, and describing in detail what efforts the Navy had made to search for documents relevant to this lawsuit. Those declarations were to state what places were searched, when searches were made, the identities of those searching and from whom documents were sought. Additionally, Defendant agreed to produce similar declarations describing in detail what efforts were made to maintain and preserve relevant documents and things which would have been

5

> responsive to Plaintiff's discovery requests. Defendant additionally agreed to produce the signatories to those Declarations for deposition so that Plaintiff could ask follow-up questions and further clarify the search efforts

Doc. 166, 2:12-24. This agreement clearly covered all documents, paper and electronic; Plaintiff made no objection that the agreement failed to exhaust the full universe of record media. In the First Order, Judge Snyder directly referenced this agreement:

> Defendant responded that these documents are neither material nor likely to lead to admissible evidence, and that the requests are vague, ambiguous, overbroad, and unduly burdensome. Defendant maintained that it had produced all responsive documents of which it is aware, but that it would produce any additional documents that it might be able to locate in an additional diligent search. Finally, Defendant agreed 'to provide written declarations, under penalty of perjury, describing in detail what efforts were made to search for documents relevant to this lawsuit, which will state what places were searched, when searches were made, the identities of those searching and those from whom documents were sought.'
>
> Plaintiff speculates on what documents must exist, based on the identity of various witnesses and Plaintiff's own assumptions. Plaintiff and his counsel elected not to depose witnesses, preferring to structure their case using documents and records. The choice of litigation strategy is, of course, solely a matter for Plaintiff and counsel. Having failed to depose knowledgeable individuals who are prospective witnesses, however, Plaintiff himself failed to develop the evidence necessary to identify and demand documents known to exist but not produced in this action.

Doc. 175, 15:5-15. This language makes clear that Judge Snyder did indeed consider and reject Plaintiff's requests for additional documents of all forms. Further, this language references Defendant's objections and effectively accepted them as valid.

Plaintiff cites to language in the First Order that states "Plaintiff's having provided no basis other than speculation for the existence of the requested documents, the Court adopts Defendant's proposal that it certify that it has thoroughly searched all relevant sources of electronic documents and that all available electronic documents have been disclosed." Doc. 175, 15:17-20. The reference to electronic documents is plain. However, in the context of the overall discussion between the court and parties, the limitation to electronic documents appears to be a simple mistake that did not affect the substance of the ruling, which covered all documents. Defendant concurs in this understanding and represents that "The Order has adequately addressed Plaintiff's motion to compel production of documents, has noted that Defendant has provided Declarations outlining efforts made to search for documents (not restricted to 'electronic'

documents) and is clearly applicable to all documents sought to be produced, not just those in electronic format." Doc. 179, Part 1, 3:21-25.

At most, the First Order's language should be considered harmless error. The parties understood the substance of the ruling notwithstanding the precise wording. Such a situation does not call for granting reconsideration. Cf. Mungo v. Taylor, 2003 U.S. Dist. LEXIS 3412, *16 (N.D. Ill. Mar. 6, 2003) ("regardless whether Judge Wedoff's refusal to order the depositions of the siblings was erroneous, that error was harmless because Mungo was not foreclosed from obtaining access to equivalent information through other discovery means"); United States v. Flaherty, 668 F.2d 566, 586 (1st Cir. 1981), quoting United States v. Harris, 542 F.2d 1283, 1291 (7th Cir. 1976) ("An error in administering discovery rules is not reversible unless it is shown that the error was prejudicial to the substantial rights of the accused"). Judge Snyder's order is not clearly erroneous or contrary to law.

**B. Reconsideration of the Second Order**

Plaintiff's second motion for reconsideration is directed at Judge Snyder's May 15, 2012 order (Doc. 183). The Second Order applied and amended certain parts of the First Order; it is limited to denying Plaintiff's request to depose the Twelve Deponents. Plaintiff objects to the First and Second Order for failing to reopen general discovery. Plaintiff also asserts that the Second Order unduly modifies Sections III.C and III.E of the First Order.

**1. General Discovery**

In the Second Order, Judge Snyder clarified that the First Order did not reopen general discovery: "Plaintiff contends that since discovery in this matter remains open until July 31, 2012, he remains able to notice and conduct depositions for general discovery purposes....Defendant counters that, except for a deposition of Plaintiff regarding his claim of damages and those depositions required pursuant to the [First Order], the discovery period has long been closed. A review of the docket in this case indicates that Defendant's position is the correct one." Doc. 183, 1:24-2:4. On reconsideration Plaintiff argues that the Second Order (in conjunction with the First

7

1  Order) worked to upset discovery agreements the parties had made previously made between
2  themselves:

> To date, only informal, off-the-record, discovery conferences have been held, at which Defendant made agreements for resolution of some of the discovery disagreements. In addition, the parties made outside-of-Court and off-the-record discovery agreements to resolve other discovery issues. Plaintiff's counsel has relied on the representations of Defendant's counsel that Defendant would comply with these agreements. But Defendant's counsel asserts it does not have to comply with its agreements because no court order requires compliance....Plaintiff relied on Defendant's representations and did not overload the court with repeated stipulations seeking formal Court Orders to approve discovery details Defendant had agreed, though stipulations were submitted to extend discovery deadlines so those agreements could be complied with. According to Defendant, the [Second Order] abrogates all agreements not specifically expressed in Court orders....[The Second Order] is clearly erroneous and judicially uneconomic in effectively requiring a party opposing the Government to seek a formal court order in order to rely upon any discovery agreement made with government counsel

Doc. 186, 14:12-15:21. Defendant agrees in part: "Magistrate Judge Snyder participated in hours of discussions and had read volumes of documents containing the prior agreements, and disagreements, of the parties prior to entering the [First Order]. She was fully advised of the issues, and made her decisions accordingly. Her Order regarding the conduct of discovery does indeed supersede all prior agreements or discussions held on these issues by the parties." Doc. 191, 6:1-5.

Judge Snyder points out that the parties had filed a joint scheduling report on April 29, 2010 in which they agreed "the discovery deadline in this case has passed, and discovery is complete with the exception of matters raised in the parties' separate motions to compel." Doc. 114:4:27-5:1. The First Order was a comprehensive decision, dealing with all outstanding discovery issues raised in the parties' various motions to compel. At that point, Judge Snyder was under the impression that the First Order exhaustively covered all remaining discovery in the case. In fact, Plaintiff's own proposed order submitted after the June 16, 2011conference included language that specifically stated "Except as indicated in this order, discovery is closed." Doc. 139, 44:18. Any additional discovery Plaintiff hoped to undertake should have been disclosed as part of the extensive discussions (which lasted for well over a year) the parties had with Judge Snyder. As she said, "this Court will not enforce attempts to conduct oral depositions if the deposing party has failed to observe the applicable rules of procedure. This is particularly true with regard to any

informal agreements between the parties between August 15, 2011, and March 16, 2012, which both parties were aware that the existing discovery disputes were pending before the Court and that any additional discovery would be subject to the Court's order resolving the disputes." Doc. 183, 6:11-16. Most of the questions Plaintiff seeks to ask the Twelve Deponents appear to fall under the category of general discovery rather than one of the specific categories Judge Snyder allowed First Order. General discovery was closed; the only discovery that could be undertaken was the limited discovery permitted by the First and Second Orders.

**2. Section III.C**

The First Order stated that Defendants were to "review, reconsider, and fully respond anew to all requests for admission no later than thirty days from this order, attending carefully to those responses to which Plaintiff has raised objections....Plaintiff has objected that the responses to its requests for admissions have not been signed by a competent witness. Within sixty days of Defendant's compliance with this order, Plaintiff may depose Christopher Perkins or any other person who verified any request for admission on Defendant's behalf of the sole purpose of determining the legal sufficiency of his or her verification." Doc. 175, 8:20-9:11. Christopher Perkins is one of the Twelve Deponents. Plaintiff argues the Second Order "now excludes from deposition those who verified Defendant's responses to Admission though expressly permitted to be deposed in [the First Order]." Doc. 186, 2:12-13.

Under the terms of the First Order, Plaintiff could depose those individuals who signed the responses for the sole purpose of determining the legal sufficiency of their verifications. Plaintiff filed his informal memo outlining the discovery disputes on April 24, 2012. Doc. 196, Part 6. Relevant to requests for admissions, Plaintiff sought to depose Perkins and Purcell, but not Cracraft. Perkins signed the original responses, which were dated October 4, 2008. Doc. 68, Part 6. Cracraft signed the revised responses, which were dated April 16, 2012. See Doc. 192, Part 6. Plaintiff asserts that "Thomas Purcell is purported to have signed verifications for Interrogatories and Admissions even though no signed verification has been sent." Doc. 186, Part 8, at 5. However, there is no record that Purcell ever signed any response to requests for admission. In the

absence of such a showing, Plaintiff is not entitled to depose Purcell under Section III.B. Regarding Cracraft, there is no indication that Plaintiff sought to depose Cracraft. Further, Cracraft is not one of the Twelve Deponents. The Second Order does nothing to modify Section III.B of the First Order with respect to Cracraft.

Plaintiff does seek to depose Perkins. Judge Snyder explains that "Defendant objects to an additional deposition of Perkins since Plaintiff deposed Perkins in December 2011 and then had ample opportunity to question Perkins regarding the original responses. The Court agrees with Defendant that Plaintiff is not entitled to a second bite of the apple....Having previously deposed Perkins, Plaintiff may not depose him further." Doc. 183, 5:1-9, citations omitted. Plaintiff argues that Judge Snyder limited the scope of the December 2011 deposition and that he was not given the opportunity to address the issues set out in Section III.B at that time. Specifically, Plaintiff alleges

> the Minutes of the 21 October 2011 telephonic Status Conference, do not reflect what was fully discussed with the Court. The Minutes do not indicate that because Defendant had not produced requested documents material to its defenses and Plaintiff's claims, the issue of Plaintiff's problems in taking general depositions without them was discussed with the Court. The Court agreed that Plaintiff could hold depositions at the Fresno Courthouse for the limited purpose of the issues of only litigation holds and document retention/destruction. General depositions would be set after the documents were produced.

Doc. 186, 12:12-13:2. In the briefing sent to Judge Snyder before she issued the Second Order, Defendant asserted with respect to Perkins that "Plaintiff seeks to re-depose a witness despite having full opportunity to question him on these issues a few months ago. He has not verified any of the amended discovery responses, which have superseded the original responses." Doc. 186, Part 2, at 4. Thus, whether Plaintiff had a full opportunity in December 2011 to depose Perkins on his verification of admissions was squarely before Judge Snyder when she was making her ruling. Judge Snyder also had personal knowledge as a participant of the October 21, 2011 telephonic conference referenced by Plaintiff. With this knowledge, Judge Snyder ruled in the Second Order that an additional deposition of Perkins would be duplicative. Given this background, Judge Snyder's order is not clearly erroneous or contrary to law.

10

**3. Section III.E**

Plaintiff propounded two sets of interrogatories. The first was dated February 25, 2008 and included two interrogatories. Doc. 66, Part 6. The second set was dated April 15, 2008 and included an additional twenty interrogatories (for a total of twenty two interrogatories). Doc. 66, Part 8. Thomas Purcell responded to the first set, but did not sign the verification. Doc. 67, Part 2. Christopher Perkins responded to the second set of interrogatories. In Section III.E of the First Order, Judge Snyder stated

> Plaintiff moved to compel more complete answers to interrogatories, specifically pointing out interrogatories 7, 8, 9, 10, and 11, and arguing that because certain answers were unresponsive to the question posed, Defendant did not meet the requirements of F.R.Civ.P. 33(b). In addition, Plaintiff contended that Defendant's objections to certain interrogatories, specifically interrogatory 5, were boilerplate, vague, ambiguous, overbroad, and unlikely to lead to admissible evidence. At the June 16, 2011 conference, Defendant agreed to review its response to Plaintiff's interrogatories.
>
> Defendant's having agreed to review and supplement its answers as necessary, this Court directs Defendant to fully respond to each interrogatory within thirty days of this order, attending carefully to those responses to which Plaintiff has raised objections. Defendant shall undertake a good faith investigation of all sources reasonably available to it in formulating its responses to the interrogatories. In the event that Defendant determines that its existing responses are correct and no revision of its prior responses is necessary, it shall so inform Plaintiff in writing within thirty days of the filing of this order.
>
> Should Plaintiff continue to consider the answer to any interrogatory incomplete or unresponsive, Plaintiff may depose the officer or agent who signed that interrogatory on behalf of Defendant within sixty days of Defendant's compliance with this order. Any such deposition shall be limited to the specific interrogatory to which Defendant's answer is alleged to be incomplete or unresponsive. The deposition may be scheduled at the Robert Coyle Federal Courthouse, 2500 Tulare Street, Fresno, California 93721 so that if objections or legal sufficiency issues are raised during testimony, they may be brought to the undersigned for a ruling as they arise.

Doc. 175, 10:25-11:19. Defendant provided updated interrogatory responses, which were signed by Richard Cracraft. Again, Purcell and Perkins are among the Twelve Deponents, but Cracraft is not.

Subsequent to the First Order, Plaintiff sought to depose Purcell and Perkins as the persons who originally responded to the interrogatories. Doc. 186, Part 6, at 5. With respect to Perkins, Judge Snyder (as explained above) declined to allow a second deposition. As for Purcell, Judge Snyder clarified that the First Order "addressed Plaintiff's contention that certain of Defendant's

11

responses to its second set of interrogatories were incomplete or unresponsive....Because only Richard Cracraft verified Defendant's revised answers to the interrogatories, he is the sole individual subject to deposition pursuant to ¶3.E. for the purpose of addressing any specific interrogatory in Defendant's revised response to Plaintiff's interrogatories (set two) that Plaintiff now contends remain incomplete or unresponsive." Doc. 183, 4:4-18. Plaintiff seeks reconsideration, asserting that Judge Snyder erred in only considering the second set of interrogatories and not the first. Plaintiff argues

> Doc. 66 (et. seq.) contain the initial brief for Doc. 51 of the 'Joint Statement re: Discovery Disagreements [For Second Motion Dealing with Discovery Matters],' which includes the **first set** of interrogatories and responses (at Doc. 66-1, at 59:24, through Doc. 66-2, at 4:13). Also filed as an Exhibit (at Doc. 67-2, at pp. 2-20) is a true copy of Defendant's responses to the **first set** of interrogatories received by Plaintiff (including the **unsigned verification** of Defendant's responses to the first set of interrogatories **bearing the signature line of 'Thomas Purcell United States Navy'** (Doc. 67-2, at p. 19)). The four years passage of time between the initial motion filing and the Discovery Orders (Doc. 175 and Doc. 183) has not changed the issue of Defendant's responses to the **first set** of interrogatories.
>
> If Doc. 175 was meant to only include Defendant's responses to the **second set** of interrogatories, then Plaintiff requests reconsideration of that erroneous limitation. Because Doc. 183 states that Defendant's responses to the **first set** of interrogatories were not before the Court for its Ruling in Doc. 175, both Doc. 183 and Doc. 175 become clearly erroneous for not including Defendant's responses to the **first set** of interrogatories.

Doc. 186, 4:6-21, emphasis in the original. However, a review of documents does not reveal evidence that Plaintiff raised any objection to the responses to the first set of interrogatories. Doc. 51 is Plaintiff's notice of motion to compel and does not discuss any specifics. Docs. 53, 54, and 56 are joint statements on discovery disputes for other discovery motions that mostly discuss production of documents and witnesses; there is no discussion of interrogatory responses.

Doc. 66, Part 1 is the joint statement on discovery disputes for Plaintiff's motion. In this document, Plaintiff does list the first set of interrogatories and responses. See Doc. 66, Part 1, 59:24-61:28 and Doc. 66, Part 2, 62:1-65:13. Plaintiff does not explain the nature of the dispute over the interrogatories though. Defendant accurately describes the text thusly: "The preceding portion of Plaintiff's joint statement (from page 13 to page 92) appears to be a recitation of all of the discovery propounded by Plaintiff, the responses by the Navy, and the conference of counsel." Doc. 66, Part 2, 91-17-19. In explaining the dispute between the parties, Plaintiff states "Because

of Navy's limited responses based on its repeated objections to the discovery requests, specifically the Requests for Documents, Navy has sorely failed to adequate[ly] produce even a bare minimum of documents it possesses, controls and/or has custody over that would not only lead to relevant evidence, but are actually highly probative in this case." Doc. 66, Part 2, 109:2-6. Review of the document as a whole shows that the disputes are over document production and not interrogatory responses.

As part of the renewed motions to compel, the parties filed a revised joint statement on discovery disputes in March 2011. Doc. 129. At one point, Plaintiff does state "Navy did not address in any reasonable format the motion to compel as to Interrogatories and Admissions, and Navy has not yet fully responded to the Request for Documents." Doc. 129, 23:7-9. But, actual review of that substance of the disputes again reveal that Plaintiff was objecting to document production and not the response to interrogatories. Of note, under a section entitled "Responses to Request for Production of Documents Porter's Position," Plaintiff asserts "Navy responded to Interrogatories by listing over 40 individuals who 'Defendant contends have relevant information regarding each and every affirmative defense...' and provided a short 'detailed summary of each person's knowledge...'....If these individuals were involved in the 1999 RIP to the degree that they, and others, can testify as to the fairness, avoidance of adverse impacts, efforts to ensure that Porter was fairly treated under all RIF avoidance policies, and regulations, they cannot do so in a vacuum." Doc. 129, 6:10-7:2. Defendant's responses to interrogatories are referenced in support of Defendant's claim that more documents needed to be produced. An example of this pattern refers to "Stephen Wooley, the person Navy designated in its responses to Interrogatories, should have these documents since the stopper lists were generated from his and other offices....Navy articulates as its defense it properly processed and registered Porter, and now we have asked for the documents to prove what Navy has represented." Doc. 129, 9:19-27. Similarly, Plaintiff states "This letter, Attachment 4A, was submitted to AUSA Gordon to point out what Porter considered to be significant deficiencies in Navy's discovery responses to Admission, Interrogatories and Requests for Production of documents. Not only was this letter never responded to in any meaningful manner, but, more importantly, has been ignored." Doc. 129, 26:14-18. In the

referenced letter, Plaintiff does not claim that the response to the interrogatories was insufficient but rather "The documents identified through the Admissions, though sought in document requests, have not been produced nor provided in the Rule 26 disclosure process. Using Navy's responses to Interrogatories, there is also a lack of documents....The documents identified through Navy responses to interrogatories, though sought in document requests, have not been produced nor provided in the Rule 26 disclosure process." Doc. 130, Part 2. Ex. 4A, at 10. Again and again in this filing, Defendant's responses to the interrogatories themselves (pointedly the first set) are not challenged in any way but rather used to justify Plaintiff's document requests.

In subsequent filings in which the interrogatory responses are challenged by Plaintiff, those substantive disputes are limited to the second set of interrogatories. See Doc. 139, 15:12-21:12. This understanding is reinforced by the First Order, which made reference to interrogatories 5, 7, 8, 9, 10, and 11, all of which are in the second set. Doc. 175, 10:25-11:3. In the many filings made with the court, there is no solid record of Plaintiff objecting to the Navy's response to the first set of interrogatories. The First Order did not clearly distinguish between the first set and second set of interrogatories, leading to some confusion. The Second Order clarified that only the responses to the second set of interrogatories were at issue. Review of Plaintiff's filings do not show any substantive objections to Defendant's responses to the first set of interrogatories. Given this background, Judge Snyder's order is not clearly erroneous or contrary to law.

**IV. Order**

Plaintiff's motions for reconsideration are DENIED.

IT IS SO ORDERED.

Dated: October 29, 2013 

_____
SENIOR DISTRICT JUDGE